# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                    NEWS RELEASE #051

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **15th day of October, 2014**, are as follows:

**BY VICTORY, J.**:

2014-CA-0691    LOUISIANA FEDERATION OF TEACHERS, EAST BATON ROUGE FEDERATION OF TEACHERS, JEFFERSON FEDERATION OF TEACHERS, NELLIE JOYCE MEARIMAN AND KEVIN JOSEPH DEHART v. STATE OF LOUISIANA (Parish of E. Baton Rouge)

For the reasons stated herein, the judgment of the district court declaring Act 1 of 2012 unconstitutional pursuant to La. Const. art. III, § 15 is reversed and the case is remanded to the district court for further proceedings.
REVERSED AND REMANDED.

# SUPREME COURT OF LOUISIANA

## NO. 14-CA-0691

*LOUISIANA FEDERATION OF TEACHERS, EAST BATON ROUGE FEDERATION OF TEACHERS, JEFFERSON FEDERATION OF TEACHERS, LESLIE JOYCE MEARIMAN AND KEVIN JOSEPH DEHART*

*VERSUS*

*STATE OF LOUISIANA*

*ON APPEAL FROM THE NINETEENTH JUDICIAL DISTRICT COURT, FOR THE PARISH OF EAST BATON ROUGE*

**VICTORY, J.**

This case comes to us on direct appeal pursuant to La. Const. art. V, § 5(D)[1] upon a finding by the district court that House Bill 974 of the 2012 Regular Session of the Louisiana Legislature, which was enacted as Act 1 of 2012 ("Act 1"), violates the single object requirement for legislative bills as provided for in La. Const. art. III, § 15(A). Upon review, we find that Act 1 does not violate the single object requirement of La. Const. art. III, § 15(A).

### FACTS AND PROCEDURAL HISTORY

During the 2012 Regular Session, the legislature passed Act 1. The title of Act 1 provides:

> To amend and reenact R.S. 17:54(B)(1)(b)(I) and (iii), 81(A) and (P)(1), 81.4, 229, 414.4, 441, 442, 443, and 444(B)(1), to enact R.S. 17:418 and 532(C), and to repeal R.S. 17:44, 45, 81(I), 154,2, 235.1(E), 346.1, 419, 419.1, 420, 421, 421.1, 421.2, 421.3, 421.5, 422, 422.1, 422.2, 422.3, 422.4, 422.5, 431, 444(A) and (B)(2) and (3), 446, 461 through 464, and 1207, relative to elementary and secondary education;

---

[1] La. Const. art. V, § 5(D)(1) provides: "**Appellate Jurisdiction.** In addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional . . ."

to provide with respect to teachers and other school employees; to provide with respect to local school superintendents, their employment, and their duties and responsibilities; to provide relative to local school boards and their functions and powers; to provide relative to school personnel decisions; to provide relative to school board reduction in force policies; to provide with respect to salaries and compensation of teachers and other school employees; to provide relative to tenure for school employees and the removal of tenured and nontenured teachers; to provide for effectiveness; and to provide for related matters.

As stated in the title, Act 1 of 2012 amended, reenacted and repealed various statutes in Title 17, which are described below.

Section 1 amended and reenacted multiple provisions in La. R.S. 17:54, 17:81, 17.81.4, 17:229 and 17:414.1. La. R.S. 17:54(B), is entitled "Officers of boards; election; superintendents, qualifications, appointment and removal." La. R.S. 17:54(B)(1)(b)(i)(aa) requires failing school systems to establish specific performance targets in a superintendent's contract for student achievement, graduation rates, and the percentage of teachers who are rated "effective" and "ineffective," and reduces the time period for notice of non-renewal of these contracts from 90 to 30 days. La. R.S. 17:54(C)(1)(b)(i)(bb) requires boards to submit superintendent's employment contracts to the state superintendent of education. La. R.S. 17:54(B)(1)(b)(i)(cc) requires boards to notify the state superintendent of education of the termination or non-renewal of a superintendent employment contract. La. R.S. 17:54(B)(1)(b)(i)(dd) provides that any employment contract between a superintendent and school board that does not meet the above requirements is null and void. La. R.S. 17:54(B)(1)(b)(iii) requires school boards to remove a superintendent who fails to fulfill the terms and performance objectives of his contract.

La. R.S. 17:81, entitled "General powers of local public school boards.," requires superintendents and principals to make employment related decisions based on performance and effectiveness. La. R.S. 17:81(A)(1) is a new provision requiring

2

school boards to serve in a policy making capacity focused on student achievement, financial efficiency and workforce development. La. R.S. 17:81(A)(2) retains the authority of school boards to determine the number and location of schools, and the number of personnel employed, but changes the law by delegating the authority to make employment decisions, to fix salaries, and to ensure compliance with state laws to local superintendents. La. R.S. 17:81(A)(3) requires school boards to delegate the authority for the hiring and placement of all school personnel to the local superintendent, provides that the superintendent is responsible for ensuring that all personnel are properly certified and qualified, and repeals the authority of school boards to reject choices made by a superintendent. La. R.S. 17:81(A)(4)(a) requires local superintendents to delegate all decisions regarding the hiring and placement of school personnel to the school's principal. La. R.S. 17:81(A)(6) is a new provision requiring that superintendents and principals make all employment-related decisions based upon "performance, effectiveness, and qualifications as applicable to each specific position," and requires that effectiveness "shall be used as the primary criterion for making personnel decisions" and prohibits "seniority or tenure" from being used as the primary criterion. La. R.S. 17:81(P)(1) removes the requirement that personnel decisions are to be approved or disapproved by school boards.

La. R.S. 17:81.4, entitled "Reductions in force; dismissal of teachers and other school employees," requires reduction in force ("RIF") decisions be based on performance and effectiveness and provides seniority or tenure shall not be included as the primary criterion in a RIF policy. La. R.S. 17:81.4(A) requires school boards to delegate RIF decisions to superintendents. La. R.S. 17:81.4(B) repeals a provision requiring that RIF policies be based on "certification seniority, tenure and academic preparation," and replaces it with the requirement that RIF policies be based solely

3

upon demand, performance, and effectiveness, as determined by the effectiveness rating in La. R.S. 17:3881-3905. La. R.S. 17:81.(C) requires that RIF policies related to dismissal of employees who are not subject to evaluation under La. R.S. 17:3881-3905 must be based upon performance and effectiveness. La. R.S. 17:81.4(D) provides rules for notice to employees of RIF policies, and deletes seniority and tenure from consideration in RIF policies.

La. R.S. 17:229 is entitled "Appointment of visiting teachers, or supervisors of child welfare and attendance." La. R.S. 17:229 delegates the authority to appoint visiting teachers and supervisors of child welfare and attendance to local superintendents rather than school boards, and removes the requirement that visiting teachers and supervisors of child welfare be "qualified electors or residents" of the parish.

La. R.S. 17:414.1 is entitled "Public elementary and secondary school principals; duties," and amends the prior statute to delegate the authority to appoint and direct principals to superintendents rather than school boards.

Section 2 of Act 1 enacts an entirely new provision of law, La. R.S. 17:418, tying compensation to effectiveness, demand and experience. La. R.S. 17:418(A)(1), entitled "Salaries; teachers and other school employees," requires the establishment of salary schedules and provides that these salaries shall be considered full compensation for all work performed. La. R.S. 17:418(A)(2) requires that salaries be established by January 1, 2013 and be effective as to all school employees not later than the 2013-2014 school year. La. R.S. 17:418(B)(1)(a)-(c) requires that salary schedules be based on effectiveness as determined by the performance evaluation program, demand, and experience, with no one criteria accounting for more than 50% of the formula. La. R.S. 17:418(B)(2) provides that no teacher or administrator who

4

is rated "ineffective" shall receive a raise or a higher salary in the year following evaluation than he or she received in the prior year. La. R.S. 17:418(C)(1) guarantees that an annual salary may not be reduced below the salary received in the preceding year, nor can it be reduced during an academic year. La. R.S. 17:418(C)(2) requires that vocational agriculture teachers teach 12 month programs for 12 month budget periods and be paid a proportional salary according to the salary schedule. La. R.S. 17:418(C)(3)(a)-(c) provides that the limitations on the reduction of salary is not applicable to the correction of accounting errors, to the reduction of a local salary supplement from a revenue source requiring voter approval when such approval hasn't been obtained, or to a teacher/employee who has been demoted to a lower position in accordance with law or policy. La. R.S. 17:418(D) exempts classified civil service employees.

Section 3 of Act 1 amended La. R.S. 17:441, 17:442, 17:443, 17:444(B)(1), and 17:532(C). La. R.S. 17:441, entitled "Definitions," changes the definition of "teacher" to include employees at state special schools and to prohibit certain employees within that definition hired after July 1, 2012 from acquiring tenure.

La. R.S 17:442(A)(1)(a) provides that any tenure acquired prior to September 1, 2012 is retained, subject to provisions of the section. La. R.S. 17:442(A)(1)(b) provides that only teachers rated as "highly effective" for five years within a six year period based upon performance evaluations may acquire tenure. La. R.S. 17:442(A)(2) provides that teachers paid with federal funds are not eligible for tenure. La. R.S. 17:442(B) requires superintendents to notify teachers in writing when tenure has been awarded and provides that a teacher who has not acquired tenure remains an at-will employee. La. R.S. 17:442(C)(1) establishes that beginning with the 2013-2014 school year, a teacher who receives an "ineffective" rating pursuant to the performance

5

evaluation program shall immediately lose tenure. La. R.S. 17:442(C)(2) provides that a teacher may reacquire tenure if the "ineffective" rating is reversed or if the teacher is subsequently rated "highly effective" for five out of six year.

La. R.S. 17:443 is entitled "Removal of teachers; procedure; right to appeal," provides the procedure for removal of teachers with tenure. These amendments to La. R.S. 17:443 were dramatically rewritten and replaced by 2014 Acts No. 570.

La. R.S. 17:444(B)(1) is entitled "promotions to and employment into positions of higher salary and tenure," and was amended to make the statute consistent with the language in the other amendments, i.e., the term "permanent status" was replaced with "tenure," "parish or city" was replaced with "local public," and "board" was replaced with "superintendent."

La. R.S. 17:532(C), entitled "Probationary term and tenure," was amended to prohibit non-teacher employees of the Iberville Parish School Board hired after July 1, 2012 from tenure eligibility.

Section 4 of Act 1 repealed twenty-eight statutes-La. R.S. 17:44, 17:45, 17:81(I), 17:154.2, 17:235.1(e), 17:346.1, 17:419, 17:419.1, 17:420, 17:421, 17:421.1, 17:421.2, 17:421.3, 17:421.5, 17:422, 17:422.1, 17:422.2, 17:422.3, 17:422.4, 17:422.5, 17:431, 17:444(A) and (B)(2) and (3), 17:461-464, and 17:1207. All of the repealed statutes dealt with a specific area covered by Act 1, such as compensation, acquiring permanent status, or related employment policies.

Plaintiffs, the Louisiana Federation of Teachers, East Baton Rouge Federation of Teachers, Jefferson Foundation of Teachers, Nellie Joyce Meriman, and Kevin Joseph DeHart, filed a petition for declaratory judgment against the State of Louisiana ("State"), alleging Act 1 was passed in violation of the "single object" requirement of La. Const. Art. III, § 15(A) and (C). In particular, the petition alleged the legislature

amended and re-enacted nine different statutes, enacted two new distinct statutes, and repealed twenty-eight statutes, and went beyond those stated objects, including: (1) school board contracts with superintendents (La. R.S. 17:54); (2) the general powers of local school boards to make policy and delegate powers to the superintendent (La. R.S. 17:81); (3) reductions in force (La. R.S. 17:81.4); (4) appointment of visiting teachers and supervisors of child welfare (La. R.S. 17:229); (5) duties of principals (La. R.S. 17:414.1); (6) salaries of teachers and other school employees (La. R.S. 17:418); (7) tenure/removal of teachers (La. R.S. 17:441, *et seq*.); and (8) promotions (La. R.S. 17:444).

Subsequently, plaintiffs filed a motion for summary judgment, arguing Act 1 is an unconstitutional violation of the single object requirement set forth in La. Const. Art. III, § 15(A) and (C), which provide:

> Section 15. (A) **Introduction; Title; Single Object; Public Meetings.** The legislature shall enact no law except by a bill introduced during that session, and propose no constitutional amendment except by a joint resolution introduced during that session, which shall be processed as a bill. Every bill, except the general appropriation bill and bills for the enactment, rearrangement, codification, or revision of a system of laws, shall be confined to one object. Every bill shall contain a brief title indicative of its object. Action on any matter intended to have the effect of law shall be taken only in open, public meeting.

> \* \* \*

> (C) Germane Amendments. No bill shall be amended in either house to make a change not germane to the bill as introduced.

Plaintiffs argued Act 1 sets forth at least eight legislative objects that have no reasonable relationship to each other, except for the happenstance that they fall within the rubric of elementary and secondary education. According to plaintiffs, the title does not reflect school board contracts with superintendents, placement of teachers, reductions in force, appointments of visiting teachers, supervisors of child welfare, and several other provisions. The State filed a cross-motion for summary

7

judgment, seeking dismissal of plaintiffs' claims and also opposed plaintiffs' motion for summary judgment.

After a hearing, the district court, Judge Michael Caldwell presiding, granted plaintiffs' motion for summary judgment, denied the State's motion for summary judgment, and declared the provisions of Act 1 amending and reenacting La. R.S. 17:54(B)(1)(b)(I) and (iii), 81(A) and (P)(1), 81.4, 229, and 414.1 unconstitutional in violation of La. Const. Art. III, § 15(A).

Thereafter, plaintiffs filed a motion for new trial claiming that Act 1 in its entirety was unconstitutional. Plaintiffs maintained Act 1 does not have one, main single object or purpose because both the title and content of Act 1 contain a multitude of objects. The State also filed a motion for new trial, arguing the amendments to La. R.S. 17:81.4, 17:81, 17:229, and 17:414.1 address the general powers of local schools boards in conformity with HB 974. In addition, the State pointed out the evaluation program set forth in La. R.S. 17:81.4 is the same program referenced in Sections 2 and 3 of Act 1, which the district court upheld. After a hearing, the district court granted plaintiffs' motion for new trial and denied the State's motion for new trial, thereby declaring Act 1 unconstitutional in its entirety in violation of La. Const. Art. III, § 15(A).

The State then directly appealed to this Court. On May 31, 2014, prior to docketing the case, this Court summarily remanded it to the district court.[2] In our per curiam opinion, we stated:

> Pretermitting the merits of the appeal, we find the parties and the district court did not have the benefit of our recent opinion in *Louisiana Federation of Teachers v. State of Louisiana*, 13-0120, 13-0232, 13-0350 (La. 5/7/13), 118 So. 3d 1033. Because our opinion clarifies the law in this area, we conclude it would be beneficial to remand the

---

[2] *Louisiana Federation of Teachers v. State*, 13-1088 (La. 5/31/13), 118 So. 3d 1073.

case to the district court for reconsideration of its ruling in light of our opinion, after appropriate briefing and argument by the parties.

On remand, plaintiffs filed a first supplemental and amending petition, alleging Act 1 violates due process rights pursuant to La. Const. art. I, § 2,[3] and the Fifth and Fourteenth Amendments of the U.S. Constitution.[4]

Thereafter, the district court held a second trial to determine the constitutionality of Act 1. At the conclusion of trial, the district court declared Act 1 unconstitutional in violation of the single object requirement set forth in La. Const. art. III, § 15(C). The district court stated in a written judgment:

> IT IS ORDERED, ADJUDGED AND DECREED that Plaintiffs are entitled to judgment declaring that Act 1 of the 2012 Regular Session of the Louisiana Legislature violates Article III, § 15A of the Louisiana Constitution, and that Act 1 of the 2012 Regular Session of the Louisiana Legislature be and is hereby declared to be unconstitutional in its entirety.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that because this Court declares Act 1 of the 2012 Regular Session of the Louisiana Legislature to be unconstitutional in its entirety, this Court does not rule on Plaintiffs' claims that La. R.S. 17:443 violates the due process clause of Article I, § 2 of the Louisiana Constitution and 5th and 14th Amendments of the United States Constitution.

---

[3] La. Const. art. I, § 2 provides "[n]o person shall be deprived of life, liberty, or property, except by due process of law."

[4] The first supplemental and amending petition alleged La. R.S. 17:443, which is contained in Act 1, violated La. Const. art. I, § 2, by failing to provide a pre-termination hearing and failing to grant teachers a meaningful employment hearing. In particular, plaintiffs alleged La. R.S. 17:443 grants the superintendent the authority to terminate a tenured teacher prior to a hearing; provides a hearing after termination based on a three person panel that includes one person designated by the teacher, superintendent, and principal; and grants the hearing panel the authority to make an employment recommendation, but not a final decision, to the superintendent. In addition, the petition alleged La. R.S. 17:443 allows the superintendent to remove tenure without a prior hearing and place a teacher on probation without a prior hearing. The first supplemental and amended petition also sought to declare La. R.S. 17:81(A) (granting superintendent authority over employment-related decisions); La. R.S. 17:81.4 (governing reduction in force); La. R.S. 17:441 through 17:444 (governing probation and tenure); and Act 1, Section 4 (providing for the repeal of certain statutes) unconstitutional in violation of due process. The district court pretermitted consideration of these constitutional challenges after finding on remand that Act 1 violated the single object rule.

In oral reasons for judgment, the district court indicated it reconsidered its prior ruling declaring Act 1 unconstitutional in light of this court's decision in *Louisiana Federation of Teachers v. State of Louisiana*, 13-0120, 13-0232, 13-0350 (La. 5/7/13), 118 So. 3d 1033 (the "Act 2 case"), which found Act 2, relating to school choice, did not violate the single object requirement in La. Const. Art. III, § 15(A). After considering the Act 2 case, the district court stated in oral reasons for judgment:

> And with regard to the "single object" challenge, I have reviewed the Supreme Court's decision in the Act 2 case several times, and it is clear from that decision that the court now requires a much broader and more expansive review of a statute and its title.

> * * *

> Now, in this instance, Act 1, the title reads as follows: to amend and reenact various listed statutes, to enact certain statutes, and to repeal certain statutes, quote, relative to elementary and secondary education; to provide with respect to teachers and other school employees; to provide with respect to local superintendents, their employment, and their duties and responsibilities, and so forth and so on, with various listed clauses as to what this Act is to provide. So after examining that title, I did examine again the body of the Act. And while I would not, from that title, and particularly not from the first clause of that title, identify a "unifying object" of the bill, I did notice from some, but not all, of the provisions some meager semblance of a unifying theme. That seemed to be an attempt to require school boards and superintendents to make hiring, firing, and compensation decisions based upon the effectiveness of the teachers and other school employees and not on other factors. However, I was unable to glean that object from all portions of the Act or from its title. The word "effectiveness" is thrown in as the last proposed clause of the title, but it is not tied to the others in any meaningful way. More importantly, as I already noted, that "object" was not apparent, at least to me, in several provisions of the Act. Thus, even after a thorough review of the Supreme Court's decision in the Act 2 case and a thorough re-review, perhaps, of Act 1 and its title, I am still of the opinion that the Act violates the single object requirement and is thus unconstitutional in its entirety. Having said that, I do not feel it is necessary for me to address the due process challenge to a portion of the Act.

The State then sought a direct appeal in this Court pursuant to this Court's appellate jurisdiction under La. Const. Art. V, § 5(A).[5] On June 9, 2014, the legislature passed 2014 Act 570, which amended and reenacted four statutes in Act 1: La. R.S. 17:441(C), 442(C), 443, and 444(B)(4)(c)(iii), relating to the procedures for disciplining and terminating teachers.[6]

## DISCUSSION

We first consider whether the enactment of Act 570 in 2014 renders our consideration of the constitutionality of Act 1 moot. In *Cat's Meow, Inc. v. City of New Orleans through Dept. of Finance*,[7] we explained that an issue is moot when a judgment or decree on that issue has been deprived of practical significance, made abstract or purely academic, or when a rendered judgment can serve no useful purpose or give relief or effect. The State contends that plaintiffs are not entitled to a judgment declaring the Act 1 version of La. R.S. 17:441-444[8] unconstitutional because those provisions no longer exist by virtue of Act 570 and there is no controversy before the Court as to their application. Likewise, the State argues plaintiffs are not entitled to a judgment declaring the Act 570 versions of those statutes unconstitutional because they are not before the Court. Even further, the State argues that plaintiffs' entire

---

[5]In a related appeal, *Deanne Williams v. Monroe City School Board*, 14-CA-0899, was initially scheduled on the September docket. In that appeal, the district court declared La. R.S. 17:443(B)(1) and 17:443(B)(2), as enacted by Act 1 of 2012, unconstitutional on the ground they violated due process. Following the enactment of Act 570 of 2014, the parties entered into a settlement of that case and filed a joint motion to dismiss, which this Court granted on August 26, 2014.

[6]Act 570, assigned into law on June 9, 2014, amended and reenacted four statutes which were included in Act 1 of 2012. These four statutes, La. R.S. 17:441, La. R.S. 17:442(C), La. R.S. 17:443, and La. R.S.17:444(B)(4)(c)(iii), relate to teacher tenure. Essentially, Act 570 of 2014 changed the procedures for the discipline and removal of tenured teachers, providing for hearings and judicial review of such decisions.

[7]98-0601 (La. 10/20/98), 720 So. 2d 1186.

[8]While this lawsuit complains that La. R.S. 17:443 allows the superintendent to remove tenure without a prior hearing and place a teacher on probation without a prior hearing, La. R.S. 17:443 as amended by the 2014 Act now provides detailed procedures for the discipline and removal of tenured teachers, including hearings and judicial review of such decisions.

11

constitutional challenge to Act 1 has been rendered moot because it must be presumed that the legislature relied on the validity of all provisions enacted by Act 1 when it passed the 2014 revisions and "dropping the provisions of Act 570 into the pre-Act 1 version of Title 17 would effectively disregard the policy that may have been intended by the legislature during its 2014 re-visitation of the same subject matter." While plaintiffs do not address the mootness issue, Amicus-the Louisiana Association of Educators-point out that Act 570 is not retroactive and is limited in scope to matters involving tenure and the process or proceedings incident to the termination of employment. Therefore, a judgment by this Court declaring Act 1 unconstitutional will have procedural significance with respect to teachers terminated by Act 1 between its effective date and the effective date of Act 570 of 2014. The effect of a judgment of unconstitutionality would be that each employee dismissed under the provisions in Act 1 will have been terminated pursuant to a law that was void from its inception and of no legal effect and would be reinstated in accordance with pre-2012 law.

We acknowledge the legislature, through Act 570 of 2014, changed the policy regarding removal and discipline of tenured teachers, which superceded the prior policy set forth in Act 1 of 2012. As the 2014 legislation does not have retroactive effect, however, we agree that there could be situations where a ruling on the constitutionality of Act 1 would have significant effect, even as to the displaced provisions. And, nothing in Act 570 specifically displaces the remaining provisions of Act 1 of 2012, such as those establishing specific performance targets in superintendent contracts or those establishing salary schedules based on effectiveness and experience. Thus, we find the challenge to the entirety of Act 1 is not moot and will proceed to decide the merits of the challenge.

This case is before us after a judgment by the district court that Act 1 violates

12

the one-object requirement of La. Const. Art. III, § 15. This court reviews judgments declaring legislative instruments unconstitutional de novo.[9] As a general rule, legislative instruments are presumed to be constitutional; therefore, the party challenging the validity of a legislative instrument has the burden of proving its unconstitutionality.[10] Because it is presumed that the legislature acts within its constitutional authority in promulgating a legislative instrument, this Court must construe a legislative instrument so as to preserve its constitutionality when it is reasonable to do so.[11] In other words, if a legislative instrument is susceptible to two constructions, one of which would render it unconstitutional or raise grave constitutional questions, the court will adopt the interpretation of the legislative instrument which, without doing violence to its language, will maintain its constitutionality.[12] Nevertheless, the constitution is the supreme law of this state to which all legislative instruments must yield.[13] When a legislative instrument conflicts with a constitutional provision, the legislative instrument must fall.[14]

---

[9]*State v. All Property and Casualty Insurance Carriers Authorized and Licensed to do Business in the State*, 06-2030 (La. 8/25/06), 937 So.2d 313, 319; *Louisiana Municipal Association v. State*, 04-0227 (La. 1/19/05), 893 So.2d 809, 842.

[10]*State v. Citizen*, 04-1841 (La. 4/1/05), 898 So.2d 325, 334; *Louisiana Municipal Association*, *supra* at 842; *Board of Commissioners of the North Lafourche Conservation, Levee and Drainage District v. Board of Commissioners of the Atchafalaya Basin Levee District*, 95-1353 (La. 1/16/96), 666 So.2d 636, 639.

[11]*State v. Fleury*, 01-0871 (La. 10/16/01), 799 So.2d 468, 472.

[12]*Hondroulis v. Schuhmacher*, 553 So.2d 398, 416-17 (La.1988).

[13]*World Trade Center Taxing District v. All Taxpayers, Property Owners*, 05-374 (La. 6/29/05), 908 So. 2d 623 632; *Caddo-Shreveport Sales and Use Tax Commission v. Office of Motor Vehicles Department of Public Safety and Corrections of the State*, 97-2233 (La. 4/14/98), 710 So. 2d 776, 780.

[14]*Caddo-Shreveport Sales and Use Tax Commission,* *supra* at 780.

Quite recently, in the Act 2 case",[15] this Court examined the constitutionality of Act 2 of 2012, which created a "Course Choice Program," and substantially amended the "Student Scholarships for Educational Excellence Program," which is otherwise referred to as the voucher program. In that case, we conducted a detailed analysis of whether Act 2 violated the one-object requirement of La. Const. art. III, § 15(A). We will use that same analysis to determine whether Act 1 of 2012 violates the one-object rule.

In the Act 2 case, we explained that the one-object requirement is a restraint on the legislature, aimed at preventing the dilution of the majority vote through "logrolling," which is the "practice of procuring diverse and unrelated matters to be passed on as one 'omnibus' through the consolidated votes of the advocates of each separate measure when perhaps no single measure could have passed on its own merits," and through "riders," or the attachment of undesirable provisions "on bills certain to be passed because of their public popularity or desirability."[16]

We explained that the "object" of a bill is "the aim or purpose of the enactment, its general purpose, the matter or thing forming the groundwork of the bill," and that "while the constitution requires unity of object in legislation, it does not restrict the permissible breadth of a bill.[17] The one-object requirement of the constitution "does not prohibit the legislature from dealing with several branches of one subject or from providing in one act the necessary means for carrying out its

[15]*Louisiana Federation of Teachers v. State* , 13-0120, 13-0232, 13-0350 (La. 5/7/13), 118 So. 3d 1033.

[16]*Louisiana Federation of Teachers, supra* at 1063-64 (citing NORMAN J. SINGER & J.D. SHAMBIE SINGER, STATUTES AND STATUTORY CONSTRUCTION § 17.1 at 7-8 (7th ed. 2009)).

[17]*Id.* at 1064.

object."[18]  In emphasizing the broad definition of "object" under the constitution, we held that "a bill may be as broad as the legislature chooses so long as all of its provisions 'have a natural connection and reasonably relate, directly or indirectly, to one general and legitimate subject of legislation.'"[19]  In a one-object analysis, "[i]t matters not how comprehensive the act may be or how numerous its provisions; it does not violate such a constitutional provision if its language, reasonably construed, shows that it has but one main, general object or purpose," and that "nothing is written into it except what is naturally connected with, and is incidental or germane to, the one purpose or object."[20]

A one-object analysis begins with identifying the main purpose or object of the bill, and then examining each provision to determine whether its parts have a natural connection and reasonably relate, directly or indirectly, to that purpose.[21]  In identifying the object, a court first looks to the title, and, if the object of the bill is not identified by examining the title alone, the court looks to the body of the bill.[22] The title of Act 1 provides:

> To amend and reenact R.S. 17:54(B)(1)(b)(I) and (iii), 81(A) and (P)(1), 81.4, 229, 414.4, 441, 442, 443, an d444(B)(1), to enact R.S. 17:418 and 532(C), and to repeal R.S. 17:44, 45, 81(I), 154,2, 235.1(E), 346.1, 419, 419.1, 420, 421, 421.1, 421.2, 421.3, 421.5, 422, 422.1, 422.2, 422.3, 422.4, 422.5, 431, 444(A) and (B)(2) and (3), 446, 461 through 464, and 1207, relative to elementary and secondary education; to provide with respect to teachers and other school employees; to provide with respect to local school superintendents, their employment, and their duties and responsibilities; to provide relative to local school boards and their functions and powers; to provide relative to school personnel decisions; to provide relative school board reduction in force

---

[18]*Id.* at 1070 (citing *State v. Cooper*, 382 So.2d 963, 965 (La. 1980)).

[19]*Id.*  (citing *Bazley v. Tortorich*, 397 So. 2d 475, 485 (La. 1981)).

[20]*Id.*  (citing *Wall v. Close*, 203 La. 345, 14 So. 2d 19, 26 (La. 1943)).

[21]*Id.* at 1065.

[22]*Id.* at 1065-1068.

policies; to provide with respect to salaries and compensation of teachers and other school employees; to provide relative to tenure for school employees and the removal of tenured and nontenured teachers; to provide for effectiveness; and to provide for related matters.

La. Const. Art. III, § 15(A) provides that "[e]very bill shall contain a brief title indicative of its object."[23] Thus, while the title does not have to state the object, it must be "indicative" of the object. The introductory phrase of Act 1 lists the statutory provisions of the bill, and identifies them as being related to "elementary and secondary education." The title goes on to reflect that the bill provides with respect to teachers and other school employees, local school superintendents and their employment, duties and responsibilities, the functions and powers of local school boards, personnel decisions, RIF policies, salaries and compensation, tenure and removal of tenure, and effectiveness. In the introductory phrase of Act 2, all of the statutory provisions encompassed by the bill were listed, and this list was followed by "relative to school choice."[24] Similar to Act, 1, this introductory phrase was followed

---

[23]Whether the title of Act 1 is indicative of its object is not before us.

[24]To amend and reenact R.S. 17:22(7)(a), 158(A)(1), 3973(3) through (6), 3981(4), 3982(A)(1)(a) and (2) and (B), 3983(A)(2)(a)(I), (3)(a), and (4)(a), (b), and (d), (B)(2), and (D), 3991(B)(3) and (13), (C)(1)(c)(iv) and (6), (D)(2)(a)(I) and (H), 3992(A)(1), 3995(A)(1)(introductory paragraph) and (c) and (4)(a), 3996(C) and (G), 3998, 4001(A) and (C)(1) and (2), and Part I of Chapter 43 of Title 17 of the Louisiana Revised Statutes of 1950, to be comprised of R.S. 17:4011 through 4025, to enact R.S. 17:10.5(F), 3973(2)(b)(vi) and (7), 3974, 3981(7) and (8), 3981.1, 3981.2, 3982(A)(3), 3983(A)(2)(a)(iii) and (d) and (3)(d) and (E)(3), 3992(D), and Part VII of Chapter 42 of Title 17 of the Louisiana Revised Statutes of 1950, to be comprised of R.S. 17:4002.1 through 4002.6, and to repeal R.S. 17:3991(B)(9) and 3996(A)(16) and (B)(4), relative to school choice; to provide relative to reports by the superintendent of education; to provide relative to the Student Scholarships for Educational Excellence Program; to provide relative to program eligibility and participation requirements for students and schools; to provide relative to selection and enrollment of eligible students; to provide relative to funding and payments to eligible schools including eligible nonpublic schools; to provide for reports; to provide for the submission of petitions by parents requesting that a school be transferred to the Recovery School District under certain conditions; to require rules and regulations to be adopted by the State Board of Elementary and Secondary Education for the petition process; to change charter proposal submission time lines; to provide a mechanism for Type 1 and Type 3 charter schools to covert to a Type 2 charter school under certain conditions; to authorize the state board to allow the state superintendent of education and the superintendent of the Recovery School District to amend the charter of Type 5 charter schools to accommodate a unified enrollment system; to modify the initial charter period; to provide for charter school admission requirements; to allow foreign language immersion schools to establish special admission standards; to provide for the qualifications of teachers; to provide relative to the evaluation of charter school teachers and other

16

by several "to provide . . ." provisions, which the Court described as "setting forth and providing fair notice of the means through which this object of providing expanded school choice is to be accomplished."[25]

While we interpreted "relative to school choice" as "providing expanded 'school choice,'" in the Act 2 case, from the title here, we can identify the general subject matter of Act 1 as "elementary and secondary education."  However, that is not an object, it's simply the general subject matter of the bill.  The "object" and "subject" of a bill are not the same thing.  "The 'object' of a law is the aim or purpose of the enactment."[26]  "The 'subject' of a law is the matter to which it relates and with which it deals."[27]  The phrases following "elementary and secondary education" describe the particular aspects of elementary and secondary education that will be addressed in the bill.  While these provisions "indicate" the object, we cannot glean the object of this bill solely from the title; therefore, we next look to the body of the bill.

In the body of Act 1, the legislature amends and reenacts nine statutes, enacts two statutes, and repeals twenty-nine statutes.  Though numerous, Act 2 was even

---

school employees;  to provide relative to teacher certification requirements;  to remove the requirement that charter schools comply with laws relative to the length of the school year;  to provide for the Course Choice Program;  to provide for program definitions and funding;  to provide for the powers of the State Board of Elementary and Secondary Education and local public school systems relative to course providers;  to provide relative to entities that authorize charter schools;  to provide for certification of certain state agencies and nonprofit corporations as charter authorizers;  to provide relative to the responsibilities of the State Board of Elementary and Secondary Education with respect to certification of such authorizers;  to provide relative to requirements, powers, responsibilities, and limitations of such authorizers;  to provide relative to schools whose charter is authorized by such entities, including matters related to funding for such schools;  to provide for procedures, processes, fees, and regulations;  to prohibit persons who have been convicted of any crime defined as a felony from being a local charter authorizer, member, officer or director of a charter school;  to require certain local charter authorizers to comply with the Open Meetings Law, the Public Records Law, and the ethics code;  and to provide for related matters.

[25]*Id.*

[26]*State v. Ferguson*, 104 La. 249, 251, 28 So. 917 (1900).

[27]*Id.*

more so, amending and reacting twenty-seven statutes, enacting twenty new statutes, and repealing three statutes. We pointed out in the Act 2 case that it does not matter "how comprehensive the act may be or how numerous its provisions; . . ."[28] We found the statutes encompassed by Act 2 "demonstrate that expanding options for choice in schools is the matter 'forming the groundwork' of each of its provisions and that nothing is written into the bill 'except what is naturally connected with, and is incidental or germane to' this main general purpose, or unifying object."[29]

Thus, we examine the statutory provisions of Act 1 to further determine the main general purpose of the bill. The provisions of Section 1 require performance based standards for superintendents and delegate to them the authority to make employment related decisions, all of which must be based on performance and effectiveness. The provisions of Section 2 relate to salaries which must be based on effectiveness. The provisions of Section 3 relate to tenure, removal, and promotions, all of which must also be based on effectiveness. The provisions of Section 4 simply repeal statutes that are now covered by Sections 1-3 of the Act. An analysis of the statutory provisions encompassed by Act 1 leads us to the conclusion that the main general purpose of Act 1 is improving elementary and secondary education through tenure reform and performance standards based on effectiveness.

Having identified the object of the Act, we next examine its provisions to determine whether its parts have a natural connection and reasonably relate, directly or indirectly, to that purpose. Plaintiffs point to several provisions which they claim either constitute separate objects, or have no natural connection or reasonable relationship to the object of improving elementary and secondary education through

---

[28] *Louisiana Federation of Teachers*, 118 So. 3d at 1064 (citing *Wall*, *supra* at 26).

[29] *Id.* at 1068.

18

tenure reform and performance standards based on effectiveness.

The first involves provisions in La. R.S. 17:54 which require (1) that contracts between the local school boards and local superintendents in school systems with performance letter grades of "C," "D," or "F,"must state performance targets relative to student achievement, and (2) that a local school board notify the state superintendent any time it terminates or fails to renew a superintendent contract, along with the reasons therefore. One of the means of improving education through tenure reform and effectiveness is to transfer authority to local superintendents, who are judged on effectiveness. La. R.S. 17:54 provides the means to achieve the object of the bill by imposing its methodology based on effectiveness from the top down. And notifying the state superintendent when a local superintendent's contract is terminated makes him aware when changes have been made to local superintendents, which is necessary given that Act 1 removed administrative authority from school boards and placed it in the hands of local superintendents. In conjunction with this, the revised statute also requires that boards submit superintendent contracts to the state superintendent. We find that these provision are germane to the object of improving elementary and secondary education through tenure reform and performance standards based on effectiveness.

Plaintiffs also complain about La. R.S. 17:81(A)(1), which gives the local school boards policymaking authority over schools, rather than administrative authority, and requires that school boards choose superintendents who would prioritize student achievement and act in the best interests of all students. This is simply a means of delegating authority over employment decisions to superintendents, which decisions will be guided by standards of effectiveness. Evidently, the legislature is of the opinion

19

that local superintendents are better

situated to make these decisions based on effectiveness, and it is not our role to question the legislature's rationale in this analysis.

In addition, plaintiffs argue that La. R.S. 17:81(A)(2) and (3), which delegate the administrative authority to local superintendents, "constitutes a significant transfer of power and authority," and is therefore either a separate object or not necessary to carry out the object of improving elementary and secondary education through tenure reform and performance standards based on effectiveness. Plaintiffs argue these provisions are not necessary because the school boards could have retained their administrative authority and utilized effectiveness in making employment decisions. Again, the legislature felt that superintendents were in a better position to make employment decisions based on effectiveness; thus, the transfer of this administrative authority was necessary to accomplish this.

Plaintiffs complain that La. R.S. 17:229, which delegates the authority to appoint visiting teachers and supervisors of child welfare and attendance to local superintendents, is not necessary to the object of improving elementary and secondary education through tenure reform and performance standards based on effectiveness. However, it is just another means of transferring hiring authority to local superintendents, which the legislature has determined is necessary to accomplish its goal. Just because this statute deals with a distinct type of teacher or employee does not render it unnecessary to accomplish the single object. As we have stated, "a statute that deals with several branches of one subject does not thereby violate the constitutional provision," and the constitution "does not mean that each and every means necessary to accomplish an object in the law must be provided for by a

20

separate act relating to it alone."[30]

Plaintiffs cite two sections of La. R.S. 17:418, which govern salaries of teachers and other employees, which they claim constitute separate objects, or are unnecessary to accomplish the above stated object. La. R.S. 17:418(A)(1) requires the establishment of salary schedules and provides in part that "[t]he salaries as provided therein shall be considered as full compensation for all work required and performed within each employee's prescribed scope of duties and responsibilities." In our view, this just confirms that the amounts established in the salary schedule are meant to constitute the full compensation the teachers will receive and is more in the nature of a further explanation of the salary schedules to be established pursuant to the other provisions of La. R.S. 17:418, which are to be based on effectiveness, demand, and experience. La. R.S. 17:418(C)(2) provides that "[e]ach vocational agricultural teacher employed by a city, parish, or other local school board shall teach a twelve-month program for a twelve-month budget period according to the salary schedule established by his employing school board." This is just a means of implementing the salary schedule relative to a certain type of teacher-a vocational agricultural teacher-and is thus reasonably related to the object of improving elementary and secondary education through tenure reform and performance standards based on effectiveness.

Finally, plaintiffs complain that La. R.S. 17:442, which made broad changes to the Teacher Tenure Law, and La. R.S. 17:443, which amended the due process requirements in the Teacher Tenure Law, were not necessary to accomplish the stated object. However, the object is improving elementary and secondary education through tenure reform and performance standards based on effectiveness,

---

[30]*Louisiana Federation of Teachers*, *supra* at 1070; *Wall*, *supra* at 25.

21

and these statutes which reformed the Teacher Tenure Law are certainly necessary to accomplish that tenure reform.

As we stated in the Act 2 case, given the state constitution's failure to specify the degree of particularity necessary to comply with the one-object rule:

> [T]he courts should not embarrass legislation by technical interpretations based upon mere form or phraseology. The objections should be grave, and the conflict between the statute and the Constitution palpable, before the judiciary should disregard a legislative enactment upon the sole ground that it embraced more than one object, or if but one object, that it was not sufficiently expressed in the title. *Inhabitants of Montclair Tp. v. Ramsdell,* 107 U.S. 147, 155, 2 S.Ct. 391, 27 L.Ed. 431 (1883).

Just as in the Act 2 case, the plaintiffs have simply failed to establish that such a grave and palpable conflict exists between Act 1 and the one-object requirement of La. Const. art. III, § 15(A). All of the provisions of Act 1 are naturally connected with, and incidental or germane to the unifying object of improving education through tenure reform and performance standards based on effectiveness.

## CONCLUSION

As we explained in the Act 2 case, the single object requirement of La. Const. art. III, § 15 is a restraint on the legislature aimed at preventing the dilution of the majority vote through "logrolling." The term "object" is to be broadly interpreted, and while the constitution requires unity of object, a bill may be as broad as the legislature chooses, and may contain as many provisions as the legislature chooses, as long as nothing is written into the bill except what is naturally connected with, and is incidental or germane to, its one object. Looking first to the title, and then to the body, of Act 1, we glean that the subject of the act is elementary and secondary education, and the object of the act is improving elementary and secondary education through tenure reform and performance standards based on effectiveness. After examining the numerous provisions of Act 1, we determine that

22

they all have a natural connection and are incidental and germane to that one object. As we stated in the Act 2 case, in order to overturn a legislative enactment pursuant to the one-object rule, "the objections must be grave and the conflict between the statute and the constitution palpable." In this case, just as in the Act 2 case, we find that plaintiffs have failed to establish that such a grave and palpable conflict exists between Act 1 and the one-object rule of La. Const. art. III, § 15. Because the district court pretermitted consideration of the other constitutional arguments raised by plaintiffs, i.e., that Act 1 violates due process rights pursuant to La. Const. art. I, § 2, and the Fifth and Fourteenth Amendments of the U.S. Constitution, the case is remanded for consideration of those issues.

## DECREE

For the reasons stated herein, the judgment of the district court declaring Act 1 of 2012 unconstitutional pursuant to La. Const. art. III, § 15 is reversed and the case is remanded to the district court for further proceedings.

**REVERSED AND REMANDED.**