**Una ANDERSON, James Fahrenholtz**

v.

**ORLEANS PARISH SCHOOL BOARD**

**No. Civ.A. 04–1578.**

United States District Court, E.D. Louisiana.

Aug. 3, 2004.

Andrew Russell Lee, Jennifer Lynn Anderson, Coleman D. Ridley, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, for plaintiffs.

Clare Jupiter, Donesia Diane Turner, Trevor G. Bryan, Bryan & Jupiter, New Orleans, LA, for defendant.

## ORDERS AND REASONS

PORTEOUS, District Judge.

This matter came before the Court on July 29, 2004, pursuant to this Court's order of July 9, 2004, and the parties Joint Stipulations dated July 14, 2004 and July 22, 2004. Accordingly, the issues before the Court are (1) Jurisdiction, (2) Standing, and (3) The validity of the unilateral termination clause contained in Superin-

tendent Amato's contract (Paragraph XIV of said contract).

This Court is satisfied that the stipulations do provide for the Court to treat this hearing as one for preliminary and permanent injunction and/or declaratory relief with respect to the unilateral termination clause.

The facts of this case are well documented in the record and previous orders of this Court and will not be repeated except as is pertinent to particular findings herein.

### A. Jurisdiction:

Plaintiffs allege in their complaint that the unilateral termination clause of Superintendent Amato's contract violated the Due Process clause of the United States Constitution because under Louisiana law the superintendent has a vested property interest in his contract and therefore cannot be terminated without cause and without notice or hearing. Plaintiffs have sufficiently pled and established that the superintendent's contract is for a fixed term under Louisiana law, thereby giving him a property interest in his continued employment. (The analysis of this finding is discussed hereafter.) The property interest gives rise to the necessity of due process before the superintendent is terminated pursuant to the 14th Amendment and the Supremacy Clause of the United States. Therefore, should the court find that plaintiffs have standing to bring suit, the federal question jurisdiction of the Court is established.

### B. Standing:

■ The core components of standing are those elements essential to the case-or-controversy requirement of Article III of the Federal Constitution. There are three elements which plaintiffs must show to be

granted standing: (1) the plaintiff must have suffered an "injury in fact," either actual or threatened, (2) there must be a causal connection between the injury and the conduct complained of, and (3) the injury must be likely redressed by a favorable decision. *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ The plaintiffs contend they have a duty as state officers to uphold the United States Constitution, including the due process rights of Superintendent Amato, and they would sustain an "injury in fact" if the School Board is allowed to interfere with this duty by exercising the unlawful unilateral termination clause. Plaintiffs cite *Brewer v. Hoxie School Dist. No. 46*, in which school board members were found to have sustained sufficient injury to warrant standing where the injury complained of was interference with the exercise of their 14th Amendment duties. *Brewer v. Hoxie School Dist. No. 46*, 238 F.2d 91 (8th Cir.1956).

The plaintiffs here, as in *Brewer*, are state officers with a "constitutionally imposed duty . . . to support the Fourteenth Amendment" and the defendant's interference with this duty through the threatened exercise of the unilateral termination clause constitutes an invasion of a corresponding legally protected interest. *Id.* Defendants have conceded that one possible action for consideration at its hastily called Board meeting was the termination of Amato pursuant to the unilateral termination clause. The Court finds that the clause violates the due process rights of the superintendent and therefore the action to terminate Amato via the unilateral termination clause will violate the independent right and duty of plaintiffs to "support the 14th Amendment and accord equal protection of the laws to all persons, and . . . to be free from direct interference in the performance of that duty." *Id.*

Though the Board concedes only that the unilateral termination of Amato was one of several possible options available to it, the totality of facts and circumstances indicate that the threat is more than sufficient to constitute direct interference with the rights and duties of the plaintiffs. If there is reasonable cause to believe that the injury or threat of injury will continue, the plaintiff is entitled to the defendant's continued restraint. This requirement may be "inferred from the nature and character of the wrong, without the necessity of showing express declarations indicating such an intention." *Jacquard Knitting Machine Co. v. Ordnance Gauge Co.*, 108 F.Supp. 59, 68 (E.D.Pa.1952). The Board admits in its Memorandum in Support of Motion to Dissolve the Temporary Restraining Order that the Board's Special Meeting was recessed "due to the imposition of the Temporary Restraining Order." The language of the TRO restrained the Board *only* from "taking a vote with respect to the continued employment" of Superintendent Amato at that Special Meeting. The Board's continued assertions that the unilateral termination of Superintendent Amato was only one of several possible options, and that no vote in this respect was specifically anticipated, is disingenuous at best. Therefore, the Court finds the threat that the Board will unilaterally terminate Superintendent Amato is substantial and ongoing.

■ Moreover, permanent injunctive relief is appropriate even if the defendant has ceased its attempts to engage in the illegal activity at issue. As the Supreme Court held in *United States v. Phosphate Export Association*, "Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave 'the defendant . . . free to return to his old ways.'" *United States v. Phosphate Export Association*, 393 U.S.

199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968). Though the Board contends the circumstances surrounding the potential termination of the superintendent have changed because "There is no longer any board meeting set to discuss Amato's performance," the Board continues to assert its alleged right to terminate the superintendent without cause and without notice or hearing pursuant to the unilateral termination clause. The threat is therefore not only substantial, but continuing.

Should the Board act on the unilateral termination clause, thereby violating Amato's due process rights, the Board and each of its members, including plaintiffs, suffer further injury to their integrity and already bruised reputations. Additionally, by violating the rights of the superintendent, whose duty it is to protect the stability and educational merit of the school system, the Board is thereby violating the rights of the students of Orleans Parish who are being forced to sacrifice the quality of their educational opportunity for the sake of political power-brokering and maneuvering.

The causal connection between the plaintiffs' injury and the defendant's conduct is established. Plaintiffs have a duty to protect the 14th Amendment, including the due process rights of their superintendent. Should the Board take unconstitutional action by unilaterally terminating the superintendent without cause and without notice or hearing, it would interfere with the rights of its individual members, including plaintiffs, to uphold the constitution. A favorable decision by this Court will redress plaintiffs' injuries in that the Board will be barred from the unconstitutional behavior about which plaintiffs complain. Therefore, it is the opinion of the Court that plaintiffs have sufficiently shown all the elements necessary to warrant a finding of standing.

## C. Validity of the Unilateral Termination Clause:

■ The plaintiffs argue that, as a matter of law, the School Board cannot unilaterally terminate Superintendent Amato without cause, notice, and a hearing. They contend that the superintendent, as a public official who has a property interest in his continued employment, cannot be deprived of that interest without being accorded the due process guaranteed by the U.S. Constitution. The plaintiffs rely upon La. R.S. 17:54, the specific statute which provides that a superintendent's term may be fixed for as long as four years and for as many as two years after the board's membership term in office expires. This Court notes that the latter provision, authorizing the two years after term expiration, was in fact the one voluntarily included in Superintendent Amato's present contract. Submitting that the Amato contract, which provides for a fixed term of three years, ten months, and 14 days, expiring on December 31, 2006, is one of a fixed term contemplated by 17:54, the plaintiffs contend that the unilateral termination clause is not only against state law, but it is violative of public policy.

The defendant contends that the unilateral termination clause contained in Amato's contract does not offend notions of due process, as the superintendent's contract is not one of a fixed term. Central to defendant's argument is the contention that the 1972 amendment to La. R.S. 17:54 significantly reduced the property interest of superintendents from one of a public officer holder, whose term was fixed by law, to one of a public employee, whose term was flexible within certain limitations. The defendant argues that an interpretation of 17:54 to permit removal of superintendents only for cause would frustrate the state's policy interest in allowing school boards to attract the highest quality candi-

dates by placing restrictions on contract negotiations.

Article 8, Section 9(B) of the Louisiana Constitution states, "Each parish board shall elect a superintendent of parish schools. The State Board of Elementary and Secondary Education shall fix the qualifications and prescribe the duties of the parish superintendent. Further, R.S. 17:54 provides, in pertinent part, as follows:

54 Officers of boards, election; superintendents, qualifications, appointment, **and removal**

B.(1) Notwithstanding the provisions of R.S. 42.3, each city and parish school board shall elect a superintendent of schools, having such qualifications as may be fixed by the State Board of Elementary and Secondary Education, for a period not to exceed four years, which period, however, may extend no longer than two years after the expiration of the term of office of the membership of the board electing the superintendent.

C. A city or parish superintendent found incompetent, inefficient, or unworthy, shall be removable for such cause by a majority vote of the membership of the school board at any regular meeting or any special meeting after due notice."

Prior to 1972, the statute provided that the superintendent's term was one of four-years. The 1972 amendment only changed that statute in that it now allows the Board to set the length of the superintendent's term to one that does not exceed four years, and which may extend no longer than two years after the expiration of the term of office of the membership of the board electing the superintendent This Court finds that this amendment was not a substantive change of R.S. 17:54 which would cause subsection (C) to be disregarded. Instead, it is apparent that the legislature contemplated a situation in which a qualified and competent superintendent could remain as the leader of the school system after a change in the membership of the school board. This would clearly protect him from the whims and maneuverings of the newly elected school board and insure that the educational system for the students was not destroyed by politics. Rather than showing that politics was the primary factor in the statute, this court firmly believes it was written to benefit those most in need of protection, the students. Accordingly, the superintendent's contract is one of a fixed term, by law.

Subsection (B) of R.S. 17:54, which requires that the Board set a fixed term, should be read together with subsection (C), which provides for the removal of a parish superintendent. As a fixed term contract, Superintendent Amato's contract is permanent, granting him a property interest in his continued employment and the due process rights that attach to such property interest. The contract's unilateral termination clause illegally attempts to deprive Amato of the rights specifically set out in R.S. 17:54(C).

The defendant's argument that the unilateral termination clause was a negotiated term of Amato's contract is irrelevant, as the clause violates public policy. Louisiana Civil Code article 7 states:

Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity.

The board's attempt to terminate Amato without cause and without notice and a hearing clearly goes against the best interest of the children and the community. The Louisiana legislature specifically pro-

vided for the removal of a superintendent in R.S. 17:54. This Court finds that the procedures mandated by state statute cannot be avoided by an clause in a contract and agreement to pay the superintendent a year's salary for no work. This clause clearly derogates from laws enacted for the protection of the public interest.

In reaching the conclusion this Court does not believe it is making an "Erie Guess" with respect to an unsettled area of Louisiana law. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Rather, this Court finds that the holding of *Bourgeois v. Orleans Parish School Board,* is as valid today, even after the amendments to La. R.S. 17:54, as it was when written. *Bourgeois v. Orleans Parish School Board,* 219 La. 512, 53 So.2d 251 (La.1951).

Defendants assert that *Hayden v. Richland,* effectively made La. R.S. 42:3 controlling as to the issue of term of service for the superintendent. *Hayden v. Richland,* 554 So.2d 164 (La.App. 2d Cir.1989). In that case, which the State Attorney General and this Court believe has been legislatively overruled pursuant to the 1988 amendment, the court held:

> La. R.S. 17:54 provides only that the term of the superintendent shall not exceed four years and can in no way be construed as establishing a minimum term of employment. Rather, the four year period specified in the statute is the maximum period for which the superintendent may serve under one contract.
>
> The superintendent of schools is an employee of the school and as such should represent the values, policies, and attitudes of the duly elected school board in order to efficiently implement the programs of the board. Obviously, the superintendent would handle most of the day to day operations of the parish schools and thus

the sitting school board should be entitled to elect a superintendent of its own choosing for this serious responsibility. As a practical matter, if La. R.S. 42:3 was not applicable, an outgoing board could always elect a superintendent to a long-term contract shortly before the expiration of its term, thereby saddling the incoming board with a superintendent whose views and policies were inconsistent or contrary to those of the incoming board, effectively thwarting the powers and goals of the new board.

With the amendment, the Louisiana Legislature has now deemed it a matter of public policy that the term of a qualified and competent superintendent should be able to exceed the terms of the electing board. The four year maximum is still in existence, but now with an educational protection clause, allowing the existing qualified and competent superintendent to ease the student's transition from old board to new with as little disruption as possible. This can only be construed as the legislative intent to allow the existing superintendent to continue the operations of the school system as an education professional despite the views and politics of the incoming board.

However, nothing in the amended statute precludes a superintendent's removal for cause. This is as it should be so that the superintendent is not immune from oversight and supervision.

With respect to the four criteria necessary for injunctive relief, (1) substantial likelihood of success on the merits, (2) irreparable injury, (3) balancing of harms, and (4) harm to the public interest, the decision today finds success on the merits. Therefore, criteria number one is met.

Criteria two is met as was found in this Court's decision of June 8, 2004, reduced

to writing on June 16, 2004, and is now more clear based upon a finding of a violation of the due process rights of plaintiffs and Superintendent Amato.

As to the third and fourth criteria, the court adheres to its findings in the original decision and makes them a part of this decision. As to harm, the School Board may well fear that this injunction would prohibit them from conducting evaluations of Superintendent Amato, thereby diminishing their ultimate authority. Such is simply not the case. If the true purpose of a meeting is to achieve those items, then they may by law do so. Further, if cause to terminate Superintendent Amato is found, nothing in this injunction precludes the Board from exercising their authority.

For the reasons stated, a preliminary and permanent injunction is hereby GRANTED. Alternatively, declaratory judgment is hereby rendered finding the unilateral termination clause invalid and unenforceable.

Accordingly,

**IT IS ORDERED** that the Orleans Parish School Board is permanently enjoined from terminating Superintendent Amato based upon the unilateral termination clause of his contract, said clause hereby being declared void and unenforceable.