# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-169

PAT COOPER

VERSUS

LAFAYETTE PARISH SCHOOL BOARD

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20145941
HONORABLE PATRICK L. MICHOT, DISTRICT JUDGE

**********

ON REHEARING

**********

VAN H. KYZAR
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John E. Conery, and Van H. Kyzar, Judges.

AFFIRMED IN PART; REVERSED IN PART;
RENDERED; AND REMANDED.

L. Lane Roy
Brown Sims, P.C.
600 Jefferson Street, Suite 800
Lafayette, LA 70501
(337) 484-1240
COUNSEL FOR PLAINTIFF/APPELLANT:
    Dr. Pat Cooper

Shelton Dennis Blunt
Paul LeBlanc
Jack B. Stanley
Phelps Dunbar LLP
P. O. Box 4412
Baton Rouge, LA 70821-4412
(225) 346-0285
COUNSEL FOR DEFENDANT/APPELLEE:
    Lafayette Parish School Board

**KYZAR, Judge.**

This matter is before us on rehearing from our previous decision. *Cooper v. Lafayette Parish School Board*, 16-169 (La.App. 3 Cir. 11/23/16), 207 So.3d 1158. We now affirm the judgment of the lower court in part, reverse in part, render, and remand the matter for proceedings consistent herewith.

## DISCUSSION OF THE RECORD

Dr. Pat Cooper was hired by the Lafayette Parish School Board (Board) to a three-year term as superintendent of the Lafayette Parish School System (School System), pursuant to a January 1, 2012 written contract. Dr. Cooper, who has a Ph.D. in Education and previous experience as a superintendent in both Louisiana and Mississippi, was hired based on a five-to-four vote of the Board and experienced difficulties with the Board from the outset. In addition to the already strained relations between them, the Louisiana Legislature passed 2012 La. Acts No. 1[1] (hereinafter Act 1), which totally changed the relationship between school boards and superintendents of schools in the state. By the middle of 2014, the Board, who had engaged outside counsel, authorized an investigation into actions taken by Dr. Cooper, which resulted in formal disciplinary charges being levied against him. The charges were as follows:

> Charge No. 1: Unworthiness, Inefficiency, Breach of Contract, Failure to Comply with Board Policy and State Law relative to Cooper's "refusal to comply with or enforce the Board's directive to terminate the employment of Special Assistant to the Superintendent Thad Welch[.]"

> Charge No. 2: Unworthiness, Inefficiency, Breach of Contract, Failure to Comply with Board Policy and State Law relative to Cooper's "failure to abide by and enforce the Board's amendment of the approved budget to remove the line item authorizing the

---

[1] 2012 La. Acts No. 1 became effective on July 1, 2012.

|                | payment of a salary for the special assistant to the superintendent[.]" |
|----------------|---|
| Charge No. 3:  | Unworthiness, Inefficiency, Breach of Contract, Failure to Comply with Board Policy and State Law relative to Cooper "directing that public (School Board) funds be used to pay an attorney that he hired, where the purpose of such representation was to advise Dr. Cooper regarding a dispute with, and a possible action against, the School Board." |
| Charge No. 4:  | Unworthiness, Inefficiency, Breach of Contract, Failure to Comply with Board Policy and State Law relative to Cooper's action "in connection with the payment of select principals in an amount in excess of the Salary Schedule established by the School Board." |
| Charge No. 5:  | Unworthiness relative to Cooper receiving a negative evaluation for his job performance for the 2013-2014 school year by a majority vote of the Board. |

Following hearings on November 5 and 6, 2014, the Board held that its counsel had proven by a preponderance of the evidence that Dr. Cooper was guilty of the facts alleged in the first four charges.[2] It further held that the facts of each proven charge constituted unworthiness, inefficiency, breach of contract, and failure to comply with Board policy and state law by Dr. Cooper. Thus, the Board voted seven to two to terminate Dr. Cooper's employment effective immediately on November 6, 2014.

Dr. Cooper immediately sought review of the Board's decision from the Fifteenth Judicial District Court in Lafayette Parish, at the conclusion of which, the district court rejected three of the four charges relied upon by the Board to terminate Dr. Cooper's employment, but upheld the Board's decision as to Charge Number Four. Following the denial of motions for new trial, Dr. Cooper appealed

---

[2] Charge Number Five, relative to Cooper receiving a negative evaluation, failed to receive a two-thirds majority of the vote as required by Section 15(D) of Cooper's employment contract; thus, it was not an issue before either the district court or this court.

2

the district court's judgment affirming his termination to this court. The Board answered Dr. Cooper's appeal, seeking reversal of the district court's rejection of the three remaining grounds for termination levied against Dr. Cooper. As indicated previously, this court originally affirmed the district court's judgment. We, thereafter, granted this rehearing.[3]

## ASSIGNMENT OF ERROR

We set out the assignments of error in our original opinion as follows:

In his one assignment of error, Dr. Cooper asserts that the [district] court "misapplied the law" in sustaining the School Board's decision on the single count. The School Board answered the appeal asserting that the evidence supported a finding that the remaining three charges not relied on by the district court had sufficient merit to support Dr. Cooper's dismissal. Additionally, the Board sought an award of "legal costs" against Dr. Cooper.

*Id.* at 1159.

Based on our finding that rehearing is warranted in this matter, we reconsider these assignments of error.

## OPINION

As noted in our prior opinion, the facts which gave rise to this litigation are not disputed. Thus, the question before this court is whether Dr. Cooper acted within his authority, as superintendent of the School System, when he performed the actions which gave rise to the Board's charges against him. The resolution of this question involves an examination of the substantial effect the enactment of Act 1 had in transferring the plenary powers held by elected school boards to appointed superintendents. Dr. Cooper took office as superintendent before the July 1, 2012

---

[3] This matter was originally heard by a panel consisting of Judge Peters, Judge Genovese, and Judge Conery. Subsequent to the November 23, 2016 opinion in this matter, Judge Thibodeaux was appointed to replace Judge Genovese, who was elected to the Louisiana Supreme Court. Cooper's application for rehearing was granted on December 29, 2016, with Judge Peters voting to deny the application. Thereafter, Judge Peters, pursuant to La.Const. art. 5, § 23(B), retired from the bench on December 31, 2016, and Judge Kyzar, who was elected to fill his seat, replaced Judge Peters on the panel.

3

effective date of the legislative act and was fired over two years after the legislation was implemented.

Act 1 significantly changed the practical and legal relationship between school boards and their superintendents. Before its effective date on July 1, 2012, La.R.S. 17:81(A) granted broad powers to school boards, including the power to hire teachers and school personnel "by the month or by the year, and to fix their salaries." As amended and reenacted by Act 1, La.R.S. 17:81(A) now provides as follows:

> (1) Each local public school board shall serve in a policymaking capacity that is in the best interests of all students enrolled in schools under the board's jurisdiction. When establishing board policies, each board shall prioritize student achievement, financial efficiency, and workforce development on a local, regional, and statewide basis. When choosing a local superintendent of schools, each board shall select a leader who shall prioritize student achievement and act in the best interests of all students enrolled in schools under the board's jurisdiction.

> (2) Each local public school board shall determine the number of schools to be opened, the location of school houses, and the number of teachers and other school personnel to be employed. The local school superintendent shall have authority to employ teachers by the month or by the year, and to fix their salaries; provided that there shall be no discrimination as to sex in the fixing thereof and provided further, that it is not the purpose of this Section to require or direct the reduction of any salary, or salary schedule, presently in force. The local school superintendent shall see that the provisions of the state school law are complied with.

> (3) Each local public school board shall delegate authority for the hiring and placement of all school personnel, including those for which state certification is required to the local school superintendent. It shall be the responsibility of the superintendent to ensure that all persons have proper certification, as applicable, and are qualified for the position.

> (4) Each local public school board shall adopt policies for and establish procedures which require a local school superintendent to:

>> (a) Delegate to the principal all decisions regarding the hiring or placement of any teacher or other personnel at the school in which the principal is employed, subject to the approval of the local school superintendent.

4

(b) Consult with teachers prior to making any decisions regarding the hiring or placement of a principal at the school in which such teachers are employed. Any recommendations made by teachers shall not be binding upon the superintendent but shall be considered by the superintendent when making employment decisions.

(5) Any policies and procedures adopted by a local public school board pursuant to the provisions of this Subsection shall be in accordance with all laws, all state rules, regulations, and policies relative to certification of teachers and other personnel, and any court order or restrictions relative to desegregation.

(6) The superintendent and the school principal shall make all employment-related decisions based upon performance, effectiveness, and qualifications as applicable to each specific position. Effectiveness, as determined pursuant to R.S. 17:3881 through 3905, shall be used as the primary criterion for making personnel decisions; however, in no case shall seniority or tenure be used as the primary criterion when making decisions regarding the hiring, assignment, or dismissal of teachers and other school employees.

Louisiana Revised Statutes 17:81(U) remained unchanged by Act 1, and provides as follows: "Notwithstanding the provisions of this Section, a city, parish, and other local public school board shall retain all authority given by law to such boards to prescribe the duties and fix the salaries of and hold tenure hearings for all employees of such boards, as applicable." Further, La.R.S. 17:418(A)(1), which was enacted as part of Act 1, provides:

The governing authority of each local public elementary and secondary school, the state special schools, and the schools and programs administered through the special school district shall establish salary schedules by which to determine the salaries to be paid to teachers and all other school employees. The salaries as provided therein shall be considered as full compensation for all work required and performed within each employee's prescribed scope of duties and responsibilities.

In our original opinion, we outlined the proper procedures relative to the hiring and firing of school superintendents in Louisiana. We further held that the proper judicial review applicable to matters involving superintendents was the same as that applied under the Teacher Tenure Law as set forth in *Wise v. Bossier*

5

*Parish School Board*, 02-1525 (La. 6/27/03), 851 So.2d 1090. Although a deferential standard of appellate review is applied to the factual conclusions of an administrative tribunal such as the Board, the same is not true for issues of law. "On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record." *State, Through La. Riverboat Gaming Comm'n v. La. State Police Riverboat Gaming Enforcement Div.*, 95-2355, p. 5 (La.App. 1 Cir. 8/21/96), 694 So.2d 316, 319. "Appellate review of a question of law involves a determination of whether the lower court's interpretive decision is legally correct." *Johnson v. La. Tax Comm'n*, 01-964, p. 2 (La.App. 4 Cir. 1/16/02), 807 So.2d 329, 331, *writ denied*, 02-445 (La. 3/8/02), 811 So.2d 887. Thus:

> On review of the district court's judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. *See* La.Const. art. 5, § 5(C); *Donnell v. Gray*, 215 La. 497, 41 So.2d 66, 67 (1949).

*Eicher v. La. State Police, Riverboat Gaming Enforcement Div.*, 97-121, n.5 (La.App. 1 Cir. 2/20/98), 710 So.2d 799, 807, *writ denied*, 98-780 (La. 5/8/98), 719 So.2d 51.

### Analysis of Charge Upheld by the District Court

It is clear from the record that this matter centers around the effect of Act 1 and disagreement between Dr. Cooper and the Board over the impact it had on the distribution of powers between a school board and the superintendent of a school district. At the time this dispute began, the Board had voted to hire Dr. Cooper by the narrowest of margins. After the enactment of Act 1, there was much discussion by the Board regarding Act 1's effect because its constitutionality was being litigated in the courts. However, during the course of the events leading up to the Board's termination of Dr. Cooper, the supreme court upheld the constitutionality

6

of Act 1 in *Louisiana Federation of Teachers v. State*, 14-691 (La. 10/15/14), 171 So.3d 835. The supreme court specifically rejected the plaintiffs' one-object constitutional challenge to La.R.S. 17:81(A)(2) and (3), pertaining to the delegation of administrative power to local superintendents. Therein, the court stated the following:

> In addition, plaintiffs argue that La.R.S. 17:81(A)(2) and (3) which delegate the administrative authority to local superintendents, "constitutes a significant transfer of power and authority," and is therefore either a separate object or not necessary to carry out the object of improving elementary and secondary education through tenure reform and performance standards based on effectiveness. Plaintiffs argue these provisions are not necessary because the school boards could have retained their administrative authority and utilized effectiveness in making employment decisions. Again, the **legislature felt that superintendents were in a better position to make employment decisions based on effectiveness; thus, the transfer of this administrative authority was necessary to accomplish this.**

*Id.* at 849 (emphasis added).

The charge found to have merit by the district court, which we originally affirmed, asserted "Unworthiness, Inefficiency, Breach of Contract, Failure to Comply with Board Policy and State Law" on Cooper's part, and listed the specific reasons for those assertions as follows:

> Dr. Cooper violated [School] Board policy and state law in connection with the payment of select principals in an amount in excess of the Salary Schedule established by the School Board. In 2006 the [School] Board adopted an indexing plan for the salaries of principals and assistant principals. This plan was subsequently incorporated into the various salary schedules approved and adopted by the [School] Board, including the salary schedule for the year 2013-14 (the "Salary Schedule"). Under this indexing plan (as incorporated in the Salary Schedule and the approved budget), elementary school principals are to be paid a salary equivalent to 203 days of work at the "daily rate of pay;" middle school principals are to be paid a salary equivalent to 213 days of work at the "daily rate of pay;" and high school principals are to be paid a salary equivalent to 224 days of work at the "daily rate of pay." However, Dr. Cooper, without prior School Board approval, agreed to pay five principals at the rate of 244 days of work. At its November 20, 2013 meeting the [School] Board refuse[d] to approve the administrative contracts of any employee being paid for 244 days of work, and any others in

excess of policy and pay grade limits. To date, the additional payments received by these principals has not been authorized, approved, or ratified by the School Board.

Dr. Cooper's termination was the direct result of his actions in hiring five principals for underperforming schools[4] with full School Board approval for the 2012-2013 and 2013-2014 school years. However, the Board did not authorize Dr. Cooper's decision to pay these five principals by the year, by increasing their authorized days of annual employment from either 203 or 224 days to 244 days as per the salary schedule set by the Board. The 2011-2012 salary schedule of the Board, which actually was enacted prior to the effective date of Act 1, provided as follows:

## COMPUTING SCHOOL-BASED ADMINISTRATIVE SALARIES USING INDEXING

1.  Using the index chart, locate the pay-grade classification in which you fall. For example, a high school principal would be pay-grade 10 with an index of 1.488.

2.  Add your administrative experience factor to your index. (.005 for each year as an administrator)

3.  Multiply your combined index (index + administrative experience factor) by your annual salary as shown on the Teacher's Salary Schedule. This is your 12 month salary.

    - If you are a 10 month employee, multiply by .8333 (10/12 – 203 Days)

    - If you are a 10.5 month employee, multiply by .875 (10.5/12 – 213 Days)

    - If you are an 11 month employee, multiply by .91667 (11/12 – 224 Days)

Example

Middle School Assistant Principal: Master's +30; 17 years total experience; 6 years experience as an administrator. This is a 10

---

[4] The principals were hired for the following schools: Carencro High School, J.W. Faulk Elementary School, Ridge Elementary School, Carencro Heights Elementary School, and Alice Boucher Elementary School.

8

month employee. The pay grade classification is 6. The index is 1.384 and the Admin. Index is .03. This person has 23 years experience with a Masters +30. The salary for that teacher is $48,259.

$48,259 X 1.414 (1.384 + .03) =$68,238 (the 12 months salary)
$68,238 X .8333 = $56,863 = 10 month administrator's salary

| INDEX CHART | |
|---|---|
| **PAY GRADE CLASSIFICATION** | **INDEX** |
| High School Principal | 1.488 |
| Middle School Principal | 1.475 |
| Elementary School Principal | 1.462 |
| High School Assistant Principal | 1.410 |
| Middle School Assistant Principal | 1.384 |
| Elementary Assistant Principal | 1.358 |

The Board's salary schedule contemplated paying principals a daily rate based on the number of days worked in a given school year and with a maximum number of days approved for each principal level. The salary schedule set the maximum days for high school principals at 224 days per year based on an eleven-month schedule; the maximum days for middle school principals at 213 days per year based on a 10.5-month schedule; and the maximum days for elementary school principals at 203 days per year based on a ten-month schedule.

Dr. Cooper, in hiring these five principals, added twenty days to the maximum days for high school principals and forty days to the maximum for elementary school principals, based on a twelve-month or yearly schedule, without first obtaining Board approval. After the Board became aware that the salary schedule, as to the length of employment, had not been followed, it refused to retroactively approve the yearly contracts of these principals. As a result, the Board levied charges against Dr. Cooper and, ultimately, voted to terminate his employment.

In our original opinion, we held that the salary schedule prohibited Dr. Cooper from paying these principals' salaries based on 244 days; thus, we affirmed the district court's judgment, which upheld the Board's termination of his

9

employment. In doing so, we now find that we incorrectly applied the law enacted by Act 1, as did the lower court and the Board. As set forth above, it is for this court to review matters of interpretation of law, and we do so as a *de novo* review. This entire matter turns on the legal interpretation and application of the provisions of Act 1, rather than on factual findings, which we acknowledge the administrative body has wide discretion in determining.

We now hold that by its plain, clear, and unambiguous language, La.R.S. 81(A)(2) and (3) provide express legal authority for a superintendent to hire school personnel by the year. While both La.R.S. 17:81(U) and 17:418(A)(1) provide that school boards continue to have the authority to set salary schedules, such schedules cannot interfere with the express authorization of a superintendent to hire a teacher, or in this case a principal, by "the year."

In this instance, Dr. Cooper exercised the authority granted to him by La.R.S. 17:81(A)(2) and (3) by hiring these five principals by "the year." In doing so, he utilized the 2011-2012 salary schedule provided by the Board to calculate their daily rate of pay based on 244 days. The salary schedule sets forth that the salaries, which are computed based on a 244 day year, are determined by multiplying the annual salary by either .8333 for 203 days or .91667 for 224 days, depending on the number of days to be worked. Although the 2013-2014 salary schedule[5] indicates that a high school principal works an eleven-month schedule

---

| INDEX CHART | | |
|---|---|---|
| PAY GRADE CLASSIFICATION | MONTHS WORKED | INDEX |
| High School Principal | 11 months | 1.488 |
| Middle School Principal | 10.5 months | 1.475 |
| Elementary School Principal | 10 months | 1.462 |
| High School Assistant Principal | 10.5months | 1.410 |
| Middle School Assistant Principal | 10 months | 1.384 |
| Elementary Assistant Principal | 10 months | 1.358 |
| High School Dean of Students | 10.5 months | 1.384 |

and an elementary school principal works a ten-month schedule, the 2011-2012 salary schedule was not that specific, as shown by the Index Chart above. Moreover, the minutes of the Board's December 4, 2013 meeting establish that the Board voted to postpone ratification of its 2013-2014 salary schedule "until staff corrects issues that exist."

We further note that neither the 2011-2012 nor the 2013-2014 salary schedule contains language mandating that principals cannot be paid more nor less than the 203 or 224 days prescribed for elementary and high school principals. There is no "shall" language in the salary schedule. In fact, the Board had previously demonstrated this itself by its payment of teachers on a yearly or 244-day basis in a certain charter school in Lafayette Parish. Teachers at this charter school, which "catered to extremely at-risk students," were paid based on a 244-day or yearly basis using the salary schedule. *Aillet v. Lafayette Parish Sch. Bd.*, 14-585, p. 1 (La.App. 3 Cir. 12/10/14), 154 So.3d 768, 770, *writ denied*, 15-409 (La. 5/1/15), 169 So.3d 376. In *Aillet*, a separate panel of this court held in favor of teachers from the charter school, who were reassigned to regular schools in the school system and whose salaries were reduced based on a reduction in days worked from 244 to 182 days. In that matter, we held that the school board had to maintain the teachers' 244 day per year schedule based on the provisions of La.R.S. 17:418(C)(1).[6]

| Middle School Dean of Students | 10 months | 1.358 |
| --- | --- | --- |

[6] La.R.S. 17:418(C)(1) provides:

The amount of the annual salary paid to a teacher or other school employee in any school year shall not be reduced below the amount of such salary paid during the previous school year, nor shall the amount of the annual salary paid to such school personnel be reduced at any time during an academic year.

11

Failing schools require more attention and more work days for their principals or school personnel, as recognized by the Board in *Aillet*. Here, Dr. Cooper applied the same salary schedule provisions and the same logic in his hiring of the five principals, yet the Board refused to recognize his authority to do the same when their roles were reversed by Act 1. Thus, we find that the Board was incorrect in their interpretation of Act 1, as was the district court in its review of that decision.

Even if the salary schedule did attempt to limit the authority of the superintendent to hire principals on a twelve-month or annual basis, the schedule itself would be in direct contravention of the provisions of Act 1, which gives the superintendent the authority to hire employees by the year, as opposed to by the month, such as ten or eleven months. While the prior version of La.R.S. 17:81 gave school boards that authority, it no longer exists under the current version of La.R.S. 17:81, and the Board, in this case, cannot interfere with the authority of the superintendent to hire teachers or principals by the year. Indeed, the legislature made it clear that after July 1, 2012, local school boards are to establish board policies, while superintendents are to administer the operation of the schools and make all school personnel decisions, as set forth in La.R.S. 17:81(A).

In this instance, we find that Dr. Cooper acted within the authority granted to him by La.R.S. 17:81(A) in hiring the five principals and determining their salaries based on the Board's salary schedule as 244-day or twelve-month employees. Thus, we find that the Board, by misapplying the law, acted arbitrarily and capriciously in terminating Dr. Cooper's employment based on Charge Number Four. Accordingly, we reverse the judgment of the lower court and render judgment in Dr. Cooper's favor on this charge.

***The Charges Rejected by the District Court***

12

In its answer to Dr. Cooper's appeal, the Board asks this court to review the district court's rejection of the remaining three charges it found viable following its hearing. We do so now, as upholding the correctness of any of the other grounds would be sufficient to uphold the Board's termination of Dr. Cooper. *Wise*, 851 So.2d 1090.

### Charge Number One

Charge Number One stated that Dr. Cooper refused to terminate Thad Welch, a Special Assistant to the Superintendent, on February 6, 2013, after the Board voted to reconsider his appointment. Welch was originally appointed to his position by the Board on March 27, 2012, and had served in that position for nearly a year. He was hired as a supervisor over facilities, maintenance, grounds, and transportation and was responsible for overseeing maintenance issues for all schools in the School System.

The district court ruled on the record in favor of Dr. Cooper, finding that Act 1 applied and that Dr. Cooper "was following the law[,]" when he refused to accede to the Board's instructions to fire Welch. Further, the district court, when asked by the Board's counsel if any "deference" was being given "to the finding of the school board on that charge," replied, "Yes, there is. That's my ruling. It was an error. They did not follow the law on that." There was much discussion between the district court and counsel for both parties regarding Welch's employment status pursuant to the terms of La.R.S. 17:81. The district court noted that the parties stipulated to the fact that Welch was a system-level employee of the Board. Based on this stipulation, the Board argued that Welch's employment was governed by La.R.S. 17:84, which provided:

> The parish school boards may appoint such assistant superintendents, supervisors, stenographers, bookkeepers as may be needed, and such attendance officers, medical directors, and other

13

appointees as may be necessary for the proper and efficient conduct of the schools; they may also fix their salaries and prescribe their duties.

Any parish or school board with a population of two hundred thousand or more may appoint a deputy parish superintendent of schools for such a period, and having such qualifications as may be fixed by the school board. The school board may also fix the salary and prescribe the duties to be performed by the deputy parish superintendent. The deputy parish superintendent of schools shall not be required to be a qualified elector or a resident of the parish which he is to serve as deputy.

The deputy parish superintendent shall serve at the pleasure of the school board, and shall be removable by a majority vote of the membership of the parish school board at any regular meeting or at any special meeting after due notice.

Both parties agreed that Welch was not a deputy superintendent. The Board argued that Welch was either an assistant superintendent or an appointee as contemplated by the language of La.R.S. 17:84, while Dr. Cooper argued that he qualified as a school personnel pursuant to La.R.S. 17:81(A)(3), as amended and reenacted by Act 1, which provided:

Each local public school board shall delegate authority for the hiring and placement of all school personnel, including those for which state certification is required to the local school superintendent. It shall be the responsibility of the superintendent to ensure that all persons have proper certification, as applicable, and are qualified for the position.

Although Board policy made a distinction between school employees and administrative employees in its salary schedule, the district court asked counsel for the Board to define the term "school personnel" as used in La.R.S. 17:81(A)(3). Although counsel initially claimed that there were "multiple areas of law where school personnel are defined," he later admitted that he was "not familiar with any definition of school personnel." Counsel further stated:

The bottom line is the categorization of employees, system level, central office, supervisory, those positions are up to the board to hire and terminate. Those school level employees, teachers at a school, they are designated, they have that authority now rests [sic] with the superintendent, but even below that, the superintendent has even

14

delegated that authority down even further to the principal level to pick the teachers at their school.

In rejecting counsel's argument and finding that La.R.S. 17:84 was not applicable to Welch's employment, the district court responded:

> Yes, so basically what you are saying is, if the principals can't run their schools, the superintendent gets to hire and fire teachers, but the superintendent can't hire and fire all the people that are on his staff. That's what you're telling me. The school board is going to go turn around and hiring and firing people on the superintendent's staff - -
>
> . . . .
>
> - - and the superintendent turns around and goes behind the principals and hires and fires the teachers; right? Well, I'm going to go ahead and make my ruling right now. Thad Welch was a school personnel as according to Act 1. So, there you have it. So that Charge 1, that is not, it's basically overruled by this Court. The breach of contract as to the firing of Thad Welch.

As reflected in our analysis concerning the authorization given to superintendents in the hiring of school personnel under Act 1, the district court was correct in its judgment overturning the Board's decision to terminate Dr. Cooper on the basis of Charge Number One. Accordingly, the judgment of the district court is affirmed with regard to this charge.

***Charge Number Two***

Charge Number Two stated that Dr. Cooper refused to terminate Welch after the Board removed the line item from the Board's budget, which authorized payment of his salary. The Board had previously approved the 2012-2013 budget containing a line item authorizing the new position held by Welch. On March 20, 2013, after Dr. Cooper failed to enforce the Board's directive to terminate Welch's employment, the Board voted to eliminate that line item from the approved budget. This action by the Board would have resulted in his de-facto termination.

Despite the Board's actions, Dr. Cooper refused to terminate Welch and continued to pay his salary through the reallocation of monies budgeted for the

Maintenance Department. At the hearing before the district court, counsel for the Board argued that Dr. Cooper "took money from some place else and paid the gentleman. That was inappropriate. For that reason, he was terminated as having violated Board Policy DCI and State law."

The district court ruled in favor of Dr. Cooper on Charge Number Two and stated on the record, "And the Board erred in that decision in terminating him and finding that he had violated the contract and this policy by moving that budget item, that Dr. Cooper had violated this policy and the contract." As we have held with regard to Charge Number One, Cooper did not violate the law as provided in Act 1 by employing Welch or the five principals for that matter. The Welch issue was, according to Dr. Cooper, an excuse, albeit a flimsy one, to terminate his employment based on the philosophical difference he had with the Board regarding the interpretation of Act 1. The Board's alleged motive for terminating Welch was his lack of a high school diploma, which was a prerequisite in the job description for his position. The record showed, however, that when all of the applicants were interviewed and "scored," Welch outscored the others despite the eight-percent advantage afforded them by his failure of that prerequisite. Moreover, Dr. Cooper testified that he found approximately thirty-seven instances where the Board, in the past, had hired applicants that failed to satisfy all of a position's requirements. Accordingly, the judgment of the district court is affirmed with regard to Charge Number Two.

*Charge Number Three*

Charge Number Three, which was thoroughly discussed by the district court and counsel over the two-day hearing, involved the hiring of personal counsel by Dr. Cooper and the payment of his legal fees by the Board. Dr. Cooper hired counsel to represent him after learning that the Board was considering entering a

16

letter of reprimand into his personnel file in response to his decision to retain Welch in the face of the Board's instructions otherwise. Charge Number Three stated that counsel was hired by Dr. Cooper "to advise [him] regarding a dispute with, and a possible action against, the School Board[,]" and that the legal services provided "included preparing for and attending Parish School Board meetings and consideration of a legal action challenging the School Board's reprimand of Dr. Cooper over the Welch situation." The bill was later paid by the Board's financial department at Dr. Cooper's direction, but without Board approval.

The focus of the argument on Charge Number Three was the authority granted to Dr. Cooper to hire counsel under the terms of his employment contract in Section 9, entitled "PROFESSIONAL LIABILITY," which provided:

> A. BOARD agrees that it shall defend, hold harmless and indemnify SUPERINTENDENT from any and all demands, claims, suits, actions and legal proceedings brought against SUPERINTENDENT in his individual capacity, or in his official capacity as agent and employee of the BOARD, provided the incident arose while the SUPERINTENDENT was acting within the scope of his employment and excluding criminal litigation and as such liability coverage is within the authority of the school BOARD [sic] to provide under state law. In no case will individual BOARD members be considered personally liable for indemnifying SUPERINTENDENT against such demands, claims, suits, actions and legal proceedings.

> B. If, in the good faith opinion of SUPERINTENDENT, conflict exists as regards the defense to such a claim between the legal position of SUPERINTENDENT and the legal position of District, the SUPERINTENDENT may engage counsel in which event BOARD shall indemnify the SUPERINTENDENT for the costs of legal defense as permitted by state law.

> C. BOARD shall not, however, be required to pay any costs of any legal proceedings in the event BOARD and SUPERINTENDENT have adverse interests in such litigation, except as stated above.

The Board argued that Section 9 was an indemnity provision and that it only applied to disputes filed by third parties against Dr. Cooper and the Board, rather than disputes actually between Dr. Cooper and the Board.

17

The district court ruled during the hearing in favor of Dr. Cooper on Charge Number Three. On the first day of the hearing, it issued a preliminary ruling, holding that the terms of the contract, specifically Section (B), controlled. It further stated several times, in response to argument by the Board's counsel, that Section 9 dealt with professional liability and made no mention of either third parties or indemnification. In interpreting the contract, the district court correctly stated:

> And so, if someone from the School Board and not Mr. Cooper drafted the contract, and Paragraph 9 (b) is as clear as what it is, the (c) somewhat conflicts with (b), but any ambiguity would be resolved in favor -- or against the drafter, which would be in favor of Mr. Cooper, so therefore the legal fees would have to be paid by the Board.

When asked by the Board's counsel if it intended to "review the testimony and the opinions of the various lawyers that [were] contained in the transcript," relative to this issue, the district court replied, "I don't decide cases by a majority vote of what lawyers think on the issue. I look at what the standard of the law is, and the contract is very clear. I made my statements about contract law, so that's my ruling." The district court concluded, "Alright so the Board was incorrect in their interpretation of that law."

Counsel for the Board then alerted the district court to the fact that there was no evidence in the record as to who drafted the contract. As this was not addressed by the Board, Dr. Cooper was allowed to testify on this issue. When asked by the district court if any changes had been made to parts (A), (B), and (C) of Section 9, he responded, "No sir." The district court further asked, "That was drafted by the School Board, presented to you, and you signed it; as per that section of the contract, you made no changes or recommendations?" To which Dr. Cooper

18

responded, "No changes." The district court then stated, "So, he was not the drafter, and so my ruling is the same."

Counsel for the Board requested and was granted the opportunity to rebut Dr. Cooper's testimony, but failed to do so. Again, the district court held that the Board improperly terminated Dr. Cooper based on his action in submitting the bill for his legal services to the Board. Based on the terms of the contract and the evidence, the district court ruled that the contract was drafted by the Board and, thus, was to be construed against the Board.

> Questions of contractual interpretation are questions of law, which are subject to a de novo standard of review. *Mitchell v. Patterson Ins. Co.*, 00-612 (La.App. 3 Cir. 12/6/00), 774 So.2d 366. Contracts have the force of law between the parties, and the courts are bound to interpret them according to the common intent of the parties. La.Civ.Code arts. 1983 & 2045. If the words of the contract are clear, unambiguous, and lead to no absurd consequences, the court need not look beyond the contract language to determine the true intent of the parties. La.Civ.Code art. 2046. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050. Whether or not a contract is ambiguous is a question of law. *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-911 (La.1/14/94), 630 So.2d 759.

*Whitbeck v. Champagne*, 14-245, pp. 10-11 (La.App. 3 Cir. 10/1/14), 149 So.3d 372, 380.

We find that the district court correctly interpreted the provisions of the contract and applied the proper legal standard; accordingly, the district court's judgment regarding Charge Number Three is affirmed.

Based on our reversal of the district court's judgment relative to Charge Number Four and our affirmation of its judgment on the remaining charges, we remand the matter to the district court for a determination of the damages owed to Dr. Cooper based on the Board's breach of his employment contract, which specified that his employment was to terminate on December 31, 2015.

**DISPOSITION**

19

For the foregoing reasons, we reverse the judgment of the district court affirming the Lafayette Parish School Board's decision to terminate Dr. Pat Cooper, as the Lafayette Parish School District Superintendent of Schools, based on Charge Number Four and render judgment in favor of Dr. Pat Cooper on that charge; we further affirm the district court's judgment reversing the Lafayette Parish School Board's decision to terminate Dr. Cooper based on Charge Number One, Charge Number Two, and Charge Number Three; and we remand this matter to the district court for consideration of the damages due to Dr. Cooper as a result of the Lafayette Parish School Board's actions. All costs of this matter are assessed to the Lafayette Parish School Board in the amount of $11,909.89, pursuant to La.R.S. 13:5112(A).

**AFFIRMED IN PART; REVERSED IN PART; RENDERED; AND, REMANDED.**